
DA 11-0099

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 200

NORMA JEAN KING,

       Plaintiff and Appellee,

  v.

HAYS/LODGE POLE PUBLIC SCHOOL
DISTRICT #50 BOARD OF TRUSTEES,

       Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. ADV-2010-760
                  Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Michael W. Dahlem, Attorney at Law, Whitefish, Montana

       For Appellee:

       Timothy J. McKittrick, McKittrick Law Firm, P.C., Great Falls, Montana

                    Submitted on Briefs:  June 29, 2011

                               Decided:  August 17, 2011

Filed:

               _____
                         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Norma Jean King (King) began working at the Hays/Lodge Pole School District in 1975. The elementary school is located in Lodge Pole, Montana, and the high school is located in Hays, Montana. During these years, King became a tenured employee and held positions of elementary school teacher, elementary school principal, and high school principal. In June 2009, after King had served as the high school principal for three school years, the School District Board of Trustees (Board) reassigned her to an elementary school teaching position. She protested and appealed the reassignment. The County Superintendent, and subsequently the State Superintendent, affirmed the Board's reassignment decision. King appealed to the First Judicial District Court. The District Court reversed the State Superintendent's ruling. We reverse and remand with instructions to reinstate the State Superintendent's decision.

## ISSUE

¶2    A restatement of the issue on appeal is whether the District Court erred in concluding that the positions of teacher and principal are not comparable positions of employment under the applicable statutes and in reversing the State Superintendent's administrative decision.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    The facts in this case are undisputed. King began working for the District in 1975. She taught elementary school in Lodge Pole from 1975 until 1991, at which time she was assigned to the position of elementary school principal in which she served from 1991

until 2001. She returned to elementary teaching through the 2005-06 school year. She was then assigned as the high school principal in Hays beginning with the 2006-07 school year and held this position through the 2008-09 school year. Following this three-year period spent as the high school principal, the Board reassigned her to the position of elementary teacher for the 2009-10 school year. The Board did not provide written notice of its intent to reassign King nor did it provide a formal hearing prior to the reassignment. The Board asserted no wrongdoing on King's part. Under King's 2009-10 contract as an elementary teacher, her salary was increased by more than $3,000 from her salary as principal and her required hours of work were reduced by 20.

¶4    King accepted the reassignment under protest and on June 29, 2009, filed an appeal with Carol Elliott, the Blaine County Superintendent of Schools. King protested her reassignment from high school principal to elementary teacher, asserting that the principal position was not eliminated, there was no reduction in force, a levy did not fail, and the Board did not have good cause to reassign her. Elliott, scheduled for imminent retirement, recused herself, and Shirley Isbell, Hill County School Superintendent, presided over King's appeal. On November 12, 2009, Isbell affirmed the Board's reassignment decision. King appealed Isbell's ruling to Denise Juneau, the State Superintendent of Public Instruction. Juneau concluded that the Board did not violate the law in reassigning King because the positions of "teacher" and "principal" are comparable positions of employment pursuant to § 20-4-203, MCA. She therefore affirmed Isbell's decision.

¶5      King appealed to the District Court.  After conducting a hearing, the District Court issued its Decision and Order.  Relying on *Sorlie v. School Dist.*, 205 Mont. 22, 667 P.2d 400 (1983), the District Court held that the Superintendent of Public Instruction erred in ruling that a principal position was comparable to a teaching position.  The District Court stated:  "Although comparable in salary and tenure for purposes of reassignment in financial crisis, the two positions are not comparable for purposes of a reassignment such as the present one which was made for reasons not related to budget deficits."  The court also used the dictionary definition of "comparable" to conclude that King's principal position was not comparable to her reassigned teacher position because the jobs were functionally dissimilar.  The District Court therefore reversed the Superintendent of Public Instruction and remanded the matter.  The Board appeals.  We reverse and remand.

## STANDARD OF REVIEW

¶6      A district court's interpretation and application of a statute is a conclusion of law that we review for correctness.  *Kulstad v. Maniaci*, 2009 MT 403, ¶ 6, 353 Mont. 467, 221 P.3d 127.  An agency's conclusions of law are reviewed to determine if they are correct.  This same standard of review is applicable to both the district court's review of the administrative decision and our subsequent review of the district court's decision. *Pennaco Energy, Inc. v. Mont. Bd. of Envtl. Review*, 2008 MT 425, ¶ 18, 347 Mont. 415, 199 P.3d 191.

## DISCUSSION

¶7     *Did the District Court err in concluding that the positions of teacher and principal are not comparable positions of employment under the applicable statute and in reversing the State Superintendent's administrative decision?*

¶8     The Board's authority to reassign or transfer employees—even against the will of those employees—derives from multiple sources. Article X, Section 8 of the Montana Constitution provides: "The supervision and control of schools in each school district shall be vested in a board of trustees to be elected as provided by law." Additionally, § 20-3-324(1), MCA, states: "As prescribed elsewhere in this title, the trustees of each district shall: employ or dismiss a teacher, principal, or other assistant upon the recommendation of the district superintendent, the county high school principal, or other principal as the board considers necessary, accepting or rejecting any recommendation as the trustees in their sole discretion determine, in accordance with the provisions of Title 20, chapter 4." Lastly, § 39-31-303(2), MCA, allows public employers to operate and manage their affairs in such areas as hiring, promoting, transferring, assigning, and retaining employees.

¶9     While the Board enjoys this broad authority, teachers and principals enjoy tenure. Tenure is a reward for longevity, among other things, the purpose of which is to provide educators with economic and job security. *Holmes v. Bd. of Trustees,* 243 Mont. 263, 266, 792 P.2d 10, 12-13 (1990) (citing *Massey v. Argenbright*, 211 Mont. 331, 683 P.2d 1332) (1984)); § 20-4-203(1), MCA. Therefore, when the Board is reassigning tenured employees, the Board must comply with § 20-4-203, MCA.

¶10    The Board argues on appeal that § 20-4-203, MCA, allows the Board to reassign a tenured principal into a comparable teaching position providing the Board does it in a

manner compliant with § 20-4-203, MCA. The Board asserts it did so in this case. King disagrees.

¶11    The following statutes are relevant to the parties' arguments and our analysis.

Section 20-1-101(15), MCA, defines "principal" as:

> a person who holds a valid class 3 Montana teacher certificate with an applicable principal's endorsement that has been issued by the superintendent of public instruction under the provisions of this title and the policies adopted by the board of public education and who has been employed by a district as a principal.[1] For the purposes of this title, any reference to a teacher must be construed as including a principal.

Section 20-1-101(26), MCA, defines "teacher" as:

> a person, except a district superintendent, who holds a valid Montana teacher certificate that has been issued by the superintendent of public instruction under the provisions of this title and the policies adopted by the board of public education and who is employed by a district as a member of its instructional, supervisory, or administrative staff. This definition of a teacher includes a person for whom an emergency authorization of employment has been issued under the provisions of 20-4-111.

Section 20-4-203(1), MCA, provides:

> Except as provided in 20-4-208, whenever a teacher has been elected by the offer and acceptance of a contract for the fourth consecutive year of employment by a district in a position requiring teacher certification except as a district superintendent or specialist, the teacher is considered to be reelected from year to year as a tenured teacher at the same salary and in the same *or a comparable position of employment* as that provided by the last-executed contract with the teacher unless the trustees resolve by majority vote of their membership to terminate the services of the teacher in accordance with the provisions of 20-4-204. (Emphasis added.)

Finally, § 20-4-205, MCA, provides:

> (1) The trustees shall provide written notice by June 1 to all teachers who have been reelected. Any teacher who does not receive notice of

---

[1] It is undisputed that King holds the necessary credentials for both teacher and principal.

reelection or termination is automatically reelected for the ensuing school fiscal year.

(2) Any teacher who receives notification of reelection for the ensuing school fiscal year shall provide the trustees with written acceptance of the conditions of the reelection within 20 days after the receipt of the notice of reelection, and failure to notify the trustees within 20 days constitutes conclusive evidence of the teacher's nonacceptance of the tendered position.

¶12 This case revolves around the meaning of the phrase "comparable position of employment" set forth in § 20-4-203(1), MCA. King challenges the authority of the Board to reassign her when her principal position still exists, and argues that a teaching position is not comparable to her principal position. To determine if these positions are comparable, we first review the definitions of these positions created by the Legislature. As noted above, the definition of principal expressly includes teachers and the definition of teacher expressly includes administrative staff members. Because both definitions incorporate both positions, we must conclude that the Legislature intended them to be viewed, at least on some level, as comparable and inclusive.

¶13 Additionally, we have addressed the comparability of teachers and principals in *Sorlie* and *Holmes*. In *Sorlie*, a tenured teacher working as an administrator but reassigned to a teaching position claimed her reassignment violated her tenure rights. Like King, Sorlie argued that the school district was required to reemploy her in the same job at the same pay. *Sorlie*, 205 Mont. at 27, 667 P.2d at 403. However, unlike the case before us, Sorlie's administrative position was eliminated because of a failed levy and budgetary constraints. *Sorlie*, 205 Mont. at 25, 667 P.2d at 401. Similarly, in *Holmes*,

7

Holmes was reassigned to teaching when the high school principal position he had held for several years was eliminated.

¶14 In *Sorlie*, the Court decided that while the two positions were functionally dissimilar, the school district did not violate Sorlie's tenure rights in reassigning her to the teaching staff based on legitimate financial constraints. The *Sorlie* Court continued, "We also hold that if a position similar to that previously held by the reassigned educator is available after program reductions or changes it *must* be offered to that person." *Sorlie*, 205 Mont. at 30, 667 P.2d at 404 (emphasis in original). In *Holmes*, we concluded the positions of principal and teacher were comparable. *Holmes*, 243 Mont. at 267, 792 P.2d at 13. While *Sorlie* and *Holmes* are factually distinguishable from the case at bar, they nonetheless stand for the premise that under § 20-4-203(1), MCA, a tenured teacher may be reassigned from a functionally dissimilar administrative position to a teaching position when such reassignments are driven by financial constraints.

¶15 In the case before us, however, King's position as principal was not eliminated; rather, it was given to someone else. Moreover, School District fiscal or financial constraints were not an issue. We therefore address for the first time the comparability of these two positions in a context not driven by financial decisions.

¶16 First, we look to the language in *Sorlie* that the District Court interpreted to mean that functional similarity must be considered along with salary and tenure status when analyzing a reassignment that "is not a consequence of budget shortages." We do not agree with the District Court's interpretation of *Sorlie*. Nothing in *Sorlie* suggests that one analysis of comparability of positions must apply in cases where budget shortages are

8

present, and another must apply where budget shortages are not in play. The *Sorlie* Court did not conclude, as did the District Court in the instant case, that "a comparable position of employment" under the statute includes functional similarity in the positions as well as salary and tenure status when the reassignment is not a consequence of budget shortages. In fact, the *Sorlie* Court limited its holding to the situation before it, and did not project what might occur if a financial crisis was not present.

¶17 We acknowledge, as noted by the District Court, that *Sorlie* did instruct that if a position similar to that previously held by the plaintiff became available again after program reductions had been completed, it must be offered to her. *See* ¶ 14. However, as no explication or analysis whatsoever was offered for this holding, we cannot conclude it was intended to shape or dictate the course of future reassignments of tenured personnel. We decline to expand and extrapolate *Sorlie* beyond its context, and conclude the District Court erred in doing so.

¶18 Our analysis of *Sorlie* is reinforced by our decision in *Massey*. Massey, a tenured teacher, was terminated when the department in which he taught experienced a staff reduction. When he sought to be reassigned to another teaching position held by a non-tenured teacher rather than be terminated, the district and the superintendent determined that the two teaching positions—business education and physical education— were not comparable. *Massey*, 211 Mont. at 334, 683 P.2d at 1333. Relying on *Sorlie*, the district court reversed the superintendent, expressly noting that "the phrase 'comparable position of employment' cannot be given a broad meaning when a school district wishes to reassign a tenured teacher to another position, as was done in *Sorlie*,

9

and at the same time be construed narrowly when a district chooses to terminate a tenured employee." *Massey*, 211 Mont. at 337, 683 P.2d at 1335. We agreed with the district court and are persuaded by this reasoning. It makes no sense to say, nor is there any statutory language to support the notion, that the statutory phrase "comparable positions of employment" means different things depending upon whether budget shortages are present or absent. For these reasons, we will not say teachers and principals are comparable positions when financial constraints exist but not when reassignment occurs for non-financial reasons.

¶19 We now turn to King's argument that under the language of § 20-4-203, MCA, she was entitled, upon reelection of employment by the District, to the "same position of employment as provided by the <u>last-executed contract</u> or to a comparable position of employment as that provided by the <u>last-executed contract</u>." She opines that both superintendents ignored the language "as provided by the last-executed contract," and the District Court properly corrected this oversight. We disagree. Were we to conclude that the statutory phrase "last-executed contract" dictated the outcome in reassignment situations, we would render superfluous the "or a comparable position of employment" language contained in the statute. As we have noted on numerous occasions, in construing a statute we are "simply to ascertain and declare what is in terms or in substance contained therein, not to . . . omit what has been inserted." *Kessel v. Liberty Northwest Ins. Corp.,* 2007 MT 305, ¶ 18, 340 Mont. 92, 172 P.3d 599; § 1-2-101, MCA.

¶20 Therefore, construing § 20-4-203(1), MCA, as a whole, we conclude that reference to the phrase "last-executed contract" merely establishes that the salary and job

description held by a tenured employee at the time the contract was executed cannot be ignored by the Board when the employee is subsequently retained or reassigned. The "comparable position" language, however, allows the School District to retain a tenured employee in the same position at the same salary *or* to reassign the employee at the same salary to a comparable position to that identified in her last employment contract. As applied to the case before us, under her last-executed contract, King was a high school principal, working 207 days at a salary of $56,650. The Board in accordance with § 20-4-203(1), MCA, reassigned her to a teaching position. Under her new contract as an elementary teacher, King worked 187 days at a salary as $59,881. King therefore received more than her previous salary and was assigned a comparable position of employment, satisfying the requisites of § 20-4-203(1), MCA. Based on the applicable statutes and case law, we hold that a teacher position and a principal position are comparable positions under § 20-4-203(1), MCA, even in situations where one of the positions has not been eliminated for financial reasons.

¶21 Finally, we reject King's due process argument that the Board unlawfully failed to provide her with advance written notice of reassignment and an opportunity for a hearing to challenge her reassignment. Simply put, there are no statutes requiring such action by the Board. The fact that the Legislature expressly incorporated notice and hearing requirements when the Board decides to *terminate* a tenured employee shows that had the Legislature intended to provide the same protections to a reassigned tenured employee, it could have. Again, under § 1-2-101, MCA, we will not insert what the Legislature has chosen to omit.

11

## CONCLUSION

¶22    For the foregoing reasons, we conclude the District Court incorrectly concluded that the positions of "teacher" and "principal" were not comparable positions in this case. As a result, it erred in reversing the State School Superintendent's administrative decision. We therefore reverse the District Court and remand this matter with instruction to reinstate the State Superintendent's decision.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ JIM RICE